UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO: 09-CR-00030-ART               *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                                                PLAINTIFF

V.        **MEMORANDUM IN OPPOSITION TO DEFENDANT'S
          MOTION TO DISMISS INDICTMENT**

JIMMY DEAN COLEMAN                                                                      DEFENDANT

* * * * * * * *

Comes now, the United States of America, by and through counsel and, hereby responds to the Defendant's Motion to Dismiss the Indictment. In his Motion, the Defendant alleges that the Indictment should be dismissed because 18 U.S.C. §2250 violates the Defendant's Constitutional Rights. Specifically, the Defendant alleges that the statute violates the Ex Post Facto Clause, the Commerce Clause, the Defendant's Due Process and Equal Protection Rights, and violates the Necessary and Proper Clause. These arguments lack merit. The Defendant's motion should be denied.

I.    **FACTS**

On October 30, 2002, the Defendant was convicted in Preble County, Ohio, of Sexual Battery, Burglary and Felonious Assault. The Defendant was sentenced to a total

of three years of incarceration, and, after a hearing, was found to be a Sexually Oriented Offender. At the time of the entry of the Judgment, the Defendant signed the Judgment Entry and Notice of Duties to Register as an Offender of a Sexually Oriented Offense, acknowledging that the requirements to register as a sex offender were explained to him. Pursuant to the provisions of Ohio Revised Code Chapter §2850, this classification required that the Defendant register as a Sex Offender for ten years. The Defendant was released from custody on July 29, 2005.

After the Defendant's release from custody, the Defendant never registered as a sex offender in the State of Ohio, or any other state. On December 2, 2005, the Ohio Office of the Attorney General sent a letter to the Kentucky State Police Sex Offender Registration Unit, notifying them of the Defendant's intentions to move to a specific address in Turkey Creek, Kentucky. On December 13, 2005, the Kentucky State Police sent the Defendant a letter at the Turkey Creek address, notifying him of his requirement to register in Kentucky. The letter was returned as undeliverable. On March 16, 2006, the Defendant was arrested in Lumberton, North Carolina, for a parole violation and was ultimately sentenced on May 1, 2006, to an additional one hundred days incarceration for the parole violation.

On August 9, 2006, the Defendant was again released from custody and, prior to his release, signed a form acknowledging his requirements to register. He was given a date of August 14, 2006, to register in Montgomery County, Ohio, where he indicated he would be residing. On August 16, 2006, the State of Ohio issued a warrant for the

Defendant's arrest for a parole violation, as the Defendant never complied with the sex offender registration requirement. On April 28, 2009, the Defendant was arrested in Pike County, Kentucky, on the warrant for the parole violation. When he was arrested, the Defendant stated that he had lived at that address for approximately two years. He was residing there with his girlfriend and their daughter. When the Defendant was arrested, he commented to U. S. Marshal Calvin Whitis, "How did you know I was here, I thought I had dropped off the radar?" The Defendant never registered in the state of Ohio or the state of Kentucky. On August 6, 2009, the Defendant was indicted for violation of the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. §2250(a).

## II.     ARGUMENT

### A.     PROSECUTION UNDER 18 U.S.C. §2250 DOES NOT VIOLATE THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION

The Defendant first argues that SORNA violates the Ex Post Facto Clause of the United States Constitution, because SORNA increases the punishment for the Defendant for his conviction of a state law sex offense, when that punishment was not available at the time of his conviction. The Defendant argues that SORNA is not a statute that establishes civil proceedings but increases criminal punishment. The Defendant is incorrect.

The Ex Post Facto Clause of the United States Constitution provides that "[n]o Bill of Attainder or ex post facto law shall be passed." U.S. CONT., art.I § 9, cl.3. The clause "forbids the application of any law or rule that increases punishment for pre-existing

3

conduct." United States v. Munoz-Franco, 487 F.3d 25, 55 (1st Cir. 2007).  A law violates the ex post facto clause if it punishes as a crime, an act that was not criminal when it was committed or makes the punishment for a crime greater than when the crime was committed. Collins v. Youngblood, 497 U.S. 31, 52, 110 S.Ct. 2715 (1990).  In its analysis, the Court must "ascertain whether [Congress] meant the statute to establish 'civil proceedings.'"  Smith v. Doe, 538 U.S. 84, 92, 123 S.Ct. 1140 (2003).

The application of SORNA to the Defendant does not violate the ex post facto clause of the Constitution.  The Defendant's ex post facto challenge alleges that SORNA imposes additional penalties for his state law sex offense—an offense that was committed before SORNA was enacted.  The Defendant's argument, however, has previously been rejected by the Sixth Circuit.  United States v. Samuels, 319 F. App'x 389, 395 (6th Cir. 2009).  Samuels explicitly held that "Section 2250 punishes an individual for traveling in interstate commerce and failing to register. The statute does not punish an individual for previously being convicted of a sex crime." Id. (citing United States v. May, 353 F.3rd 912, 919 (8th Cir. 2008)).  In so holding, the court further explained that "'SORNA's registration requirement demonstrates no congressional intent to punish sex offenders.'" Id.  Instead, the court noted that, "[t]he only punishment that can arise under SORNA comes from a violation of § 2250, which punishes convicted sex offenders who travel in interstate commerce after the enactment of SORNA and who fail to register as required

by SORNA.'" Id. Numerous other Circuits have reached the same conclusion.[1] United States v. George, ____F.3d ____, 2009 WL 2591677 (9th Cir. August 25, 2009)(holding that "SORNA's registration requirements . . . do not violate the ex post facto clause of the Constitution"; United States v. Hatcher, 560 F.3d 222, 234 (4th Cir. 2009)(upholding SORNA against ex post facto challenge); May, 535 F.3d at 920 ( holding that SORNA applies to sex offenders convicted prior to the statute's passage, and that such application does not violate the Ex Post Facto Clause).  Because SORNA does not punish the Defendant for his prior sexual offense, but instead penalizes his subsequent travel and failure to register as a sex offender, any claim of retroactive punishment is misplaced. The Defendant's ex post facto challenge should be denied.

      **B.**    **CONGRESS ACTED WITHIN ITS AUTHORITY UNDER THE COMMERCE CLAUSE OF THE CONSTITUTION TO ENACT 18 U.S.C. §2250 (A)**

The Defendant also argues that SORNA violates the Commerce Clause because it does not establish a nexus to interstate commerce. According to the Defendant, a jurisdictional element is not sufficient to provide the link between the statute and interstate commerce.  The Defendant is incorrect.

      Congress may properly enact legislation under its commerce powers in three broad

---

[1] In a recent case, the Ninth Circuit held that SORNA's juvenile registration provisions did amount to punishment and were in violation of the ex post facto clause of the Constitution. United States v. Juvenile Male, ___F.3d ____, 2009 WL 2883017 (9th Cir. Sept. 10, 2009). This holding, however, was limited to the juvenile registration provisions and was a result of the unique confidentiality and privacy shields that are in place to protect juvenile offenders. Id.  The holding of Juvenile Male should have no effect on the analysis of the application of SORNA to individuals that were adults at the time of the underlying registerable offense.

categories: (1) to regulate use of the channels of interstate commerce; (2) to protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) to regulate activities having a substantial effect on interstate commerce. Lopez at 558-59. "A statute need only fit within one of these prongs to be constitutional." United States v. DiTomasso, 552 F.Supp.2d 233,245 (D.R.I. 2008).

All Circuits to have considered the issue have found SORNA to be a valid exercise of Congressional authority pursuant to at least one of the three categories articulated in Lopez. See United States v. Gould, 568 F.3d 459, 470-72 (4th Cir. 2009) (concluding that § 2250 is valid under the first two Lopez prongs); United States v. Ambert, 561 F.3d 1202, 1210 (11th Cir. 2009) ("Section 2250 is a proper regulation falling under either of the first two Lopez categories because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce."); United States v. Hinckley, 550 F.3d 926, 940 (10th Cir. 2008), cert. denied, ____U.S.____, 129 S.Ct. 2383 (2009) ("Clearly, [the defendant's] travel across state lines to and from Oklahoma falls under the first or second of the Lopez prongs. Whether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of Lopez confirm Congress's authority to regulate this type of activity."); May, 535 F.3d at 921 ("[Section 2250] thus derives its authority from each prong of Lopez-and most specifically, the ability to regulate 'persons or things in interstate commerce' and 'the use of the channels of interstate commerce.' ").

The varying rationales used by courts in upholding SORNA demonstrate the numerous aspects of SORNA which support its enactment pursuant to the Commerce Clause.  First, if the Defendant is not a federal registrant, SORNA requires interstate travel.  "Thus, even if we were to assume that the harms and targeted illegal conduct were purely local in nature, the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense under 18 U.S.C. § 2250."  Ambert, 561 F.3d at 1211.  Moreover, the federal commerce power encompasses the movement of persons in interstate commerce as well as commodities.  United States v. Guest,  383 U.S. 745, 758-59 (1966).  "Thus, when a sex offender travels from one state to another, he is an instrumentality of interstate commerce, and by regulating these persons in SORNA, Congress has acted under its commerce clause power to regulate an instrumentality."  Ambert, 561 F.3d at 1211.

Furthermore, 18 U.S.C. §2250 regulates activities that "substantially affect interstate commerce."  See Gonzales v. Raich, 545 U.S. 1, 21 (2005)("even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce . . .").  In enacting SORNA, Congress attempted to address the national issue of sex offenders attempting to avoid registration requirements by moving in interstate commerce.  "When the high incidence of recidivism is coupled with the interstate movement of sex offenders intending to avoid state registration or to seek more lax registration requirements, Congress could rationally perceive a need to create national

standards for sex-offender registration and notification." Gould, 568 F.3d at 473.

Because SORNA involves the channels and instrumentalities of interstate commerce, and because SORNA regulates an activity that has a "substantial impact on interstate commerce," the Defendant's Commerce Clause challenge should be denied.

### C. SORNA DOES NOT VIOLATE THE DUE PROCESS AND EQUAL PROTECTION RIGHTS OF THE DEFENDANT

The Defendant next argues that his prosecution violates his due process and equal protections rights. Specifically, the defendant argues that his prosecution under SORNA violates his due process rights because it was impossible for him to comply with SORNA when he first moved to Kentucky, because there was not a system in place for him to register. The Defendant also argues that SORNA violates his Equal Protection Rights because it punishes conduct that, if performed completely intrastate, would not fall under SORNA. The Defendant's arguments lack merit.

The Defendant's prosecution does not violate his Due Process rights. The opportunity for the Defendant to comply with SORNA was available, had he chosen to register with the state in which he resided. The Defendant's requirements to register were explained to him numerous times. From the time of the Defendant's release, both Ohio and Kentucky had lawful, operational sex offender registries. Had the Defendant simply complied with his requirements to register in Ohio and then transferred his registration appropriately to Kentucky, the Defendant would have complied with SORNA. See Gould, 568 F.3d at 467 (noting that "a sex offender is able to register under SORNA if he

is able to register by means of an existing state registration facility"). Accordingly, the Defendant's argument that it was impossible for him to comply with the statute is incorrect. The Defendant's due process rights were not violated.

The Defendant next argues that SORNA violates the Equal Protection Clause of the Constitution as it targets individuals who choose to travel over interstate lines, and does not punish those who do not register within their own state. The Defendant is incorrect. Sex offenders are not a suspect or quasi-suspect class. Levine v. Pennsylvania State Police, No. 4:07-CV-1453, 2007 WL 3033951 at *2 (M.D.Pa. Oct. 16, 2007). Sex offender status is not one that has been historically used for discrimination such as race, national origin, religion, alienage and gender. Id. Nor can it be said that SORNA's registration requirement implicates a fundamental constitutional right. Id. (citing Artway v. Attorney General of State of New Jersey, 81 F.3d 1235, 1267-68 (3d Cir.1996) (finding that a sex offender registration requirement for "repetitive and compulsive sex offenders" does not implicate a fundamental constitutional right)). As a result, SORNA's registration provisions do not violate the Equal Protection Clause if they are rationally related to a legitimate interest. Kimel v. Florida Board of Regents, 528 U.S. 62, 83 (2000).

The registration provisions of SORNA are rationally related to a legitimate public interest. SORNA is "rationally related to the legitimate government interest in protecting the public from sex offenders and offenders against children by creating a comprehensive national sex offender registry to track the whereabouts of sex offenders, and prevent sex offenders from circumventing the registration requirements by moving from state to

state." United States v. Benevento, 633 F.Supp.2d 1170, 1211 (D.Nev. 2009). A sex offender, such as the Defendant, who travels to a new state and fails to register frustrates SORNA's explicit goal of protecting public safety. Sex offenders that travel from one state to another make tracking their activity and protecting citizens from their potential danger an impossible task for law enforcement. Congress rationally determined that a uniform, nationwide system for registration, including a federally imposed registration system and federal enforcement, was necessary to address the problem. United States v. Reynard, 473 F.3d 1008, 1023-24 (9th Cir. 2007). Because SORNA is rationally related to a legitimate public interest, the Defendant's prosecution under § 2250 does not violate the Equal Protection Clause of the Constitution.

### D.  SORNA DOES NOT VIOLATE THE NECESSARY AND PROPER CLAUSE

The Defendant's final argument is that SORNA violates the Necessary and Proper Clause by extending further into legislating intrastate activities. This argument lacks merit. The means chosen by Congress to accomplish the goals of SORNA are reasonably adapted to the attainment of a legitimate end under the commerce power.

The Necessary and Proper Clause grants Congress the power to "make all Laws which shall be necessary and proper" for executing its other enumerated powers. U.S. CONST. Art.I, §8, cl.18. In conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to "regulate even those intrastate activities that do not themselves substantially affect interstate commerce," so long as the Congressional

enactment is "necessary to make a regulation of interstate commerce effective."  Raich, 545 U.S. at 35.  To satisfy the Necessary and Proper Clause, the means chosen need not be "narrowly tailored" to attain the desired end, but must only "bear a rational relationship to a permissible constitutional end."  See Hankies v. Light, 441 F.3d 96, 109 (2d Cir. 2006).  The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power.  Raich, 545 U.S. at 35-37.

The argument raised by the Defendant has been addressed by several courts in other jurisdictions.  In United States v. Howell, 552 F.3d 709 (8th Cir. 2009), the Court held that, "when §16913 is analyzed in relation to the purpose of SORNA, it is evident that §16913 is an appropriate aid to the accomplishment of tracking the interstate movement of sex offenders."  That Court further held that "covering the registration of wholly intrastate sex offenders is merely incidental to Congress's tracking of sex offenders in interstate commerce.  Therefore, §16913 is constitutional under Congress's authority to use the necessary and proper means to further its commerce clause power because it is a necessary part of a more general regulation of interstate commerce. Id. at 716. See also Raich, 545 U.S. at 37.  The Fifth Circuit also reached the same conclusion in United States v. Whaley, 577 F.3d 254 (5th Cir. 2009).  In that case, the Court "conclude[d] that requiring sex offenders to register both before and after they travel in interstate commerce—which clearly facilitates monitoring those movements and which has a minimal practical impact on intrastate sex offenders—is reasonably adapted to the

goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions." Id. at 261.

The registration requirements under SORNA are necessary and proper to Congress's efforts to address the nationwide harms caused when sex offenders evade state registration requirements and monitoring by moving across state lines. Since Congress could not effectively determine beforehand which sex offenders would travel interstate, Congress could reasonably conclude that a nationwide registration for all sex offenders was a necessary and proper means to address the problem. Similarly, Congress could reasonably conclude that criminal enforcement of the registration requirement was a necessary and proper means to attain these goals. Without such enforcement, the registration requirement would likely be ineffective in addressing the problems caused by the interstate movement of sex offenders.

For the reasons cited above, the United States respectfully requests that the Defendant's Motion to Dismiss be denied.

    Respectfully Submitted,

    JAMES A. ZERHUSEN
    UNITED STATES ATTORNEY


By:   s/Elizabeth Bancroft
       Elizabeth Bancroft
       Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

    I hereby certify that on October 7, 2009, I filed the above listed response through the Court's electronic case filing (ECF) system, which will provide notice to:

        Honorable Matthew R. Malone
        Counsel for Jimmy Coleman


                By:    s/Elizabeth Bancroft
                        Elizabeth Bancroft
                        Special Assistant United States Attorney