UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 09-30-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JIMMY COLEMAN, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A federal grand jury indicted Defendant Jimmy Coleman for failing to register under the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250(a) on August 6, 2009. R. 1. On September 24, 2009, Coleman filed a motion to dismiss the indictment, R. 13, and the United States filed a response in opposition, R. 16. Coleman filed two supplemental memoranda. R. 21; R. 30. The United States filed responses in opposition. R. 23; R. 31. The Court held a hearing on the motion to dismiss on November 4, 2009, R. 26, and held a telephonic conference on November 9, 2009, R. 27. On November 17, 2009, the Court held a second telephonic conference with the parties to discuss Coleman's remaining challenges as part of his motion to dismiss. R. 32. Coleman has two remaining challenges. Coleman makes statutory construction arguments that he was not required to register under SORNA. *Id*; R. 30. Coleman also challenges the constitutionality of SORNA. R. 32; R. 13. For the reasons set forth in the opinion below, the Court denies Coleman's motion to dismiss the indictment.

# I. FACTUAL BACKGROUND

On August 8, 2009, a federal grand jury in the Eastern District of Kentucky issued the following indictment:

> Between on or about a date in April, 2007, the exact date unknown, and April 28, 2009, in Pike County, in the Eastern District of Kentucky, and elsewhere, **JIMMY COLEMAN aka JAMES DEAN COLEMAN,** an individual required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce and did knowingly fail to register and update a registration as required by the Sex Offender Registration and Notification Act, all in violation of 18 U.S.C. § 2250(a).

R. 1.

Coleman was convicted of sexual battery, burglary, and assault on October 30, 2002, in an Ohio state court. R. 16 at 1. After serving a three-year sentence, Ohio authorities released him on July 29, 2005, at which point he was required to register as a sex offender under Ohio law. *Id.* at 2. Coleman never did so in Ohio or any other state. *Id*. On March 16, 2006, authorities in North Carolina arrested Coleman for a parole violation and released him from custody on August 9, 2006. *Id*. At that time, Coleman signed a form acknowledging his requirement to register as a sex offender. *Id.* Authorities in Ohio issued an arrest warrant for Coleman on August 16, 2006, for his failure to register, and authorities in Pike County, Kentucky, arrested him on April 28, 2009. *Id.* at 2-3. At the time of his arrest in Kentucky, Coleman admitted to living in Kentucky with his girlfriend and their daughter for approximately two years. *Id.* at 3. Coleman traveled from Kentucky to West Virginia with his girlfriend and their daughter to visit his girlfriend's mother up until the time of his arrest on April 28, 2009. R. 30 at 1. Coleman's trips to West Virginia were brief day trips. *Id.*

## II. BACKGROUND ON SORNA

The President signed SORNA into law on July 27, 2006. 18 U.S.C. § 2250(a) provides:

Whoever -
(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

42 U.S.C. § 16913 specifies who is required to register under SORNA. On February 28, 2007, the Attorney General for the United States of America promulgated an interim regulation pursuant to 42 U.S.C. § 16913(d) specifying that the registration requirements of SORNA applied to individuals convicted of a sex offense before July 27, 2006. 72 Fed. Reg. 8894. The interim regulation stated that it took effect on the date it was issued, February 28, 2007. *Id.*

However, the earliest date that SORNA went into effect against Coleman and other individuals convicted of sex offenses before July 27, 2006, is not settled in the Sixth Circuit. *See United States v. Cain*, 583 F.3d 408, 424 (6th Cir. 2009). *Cain* held that the interim regulation did not take effect immediately for two reasons. First, the February 28, 2007, interim regulation did not provide "good cause" to dispense with the notice and comment provision in the

3

Administrative Procedures Act ("APA"). *Id.* at 420. Second, the interim regulation did not take immediate effect because it did not comply with the APA's requirement of thirty-day advance publication. *Id.* at 423. The *Cain* Court remanded the case with instructions to dismiss the indictment because all of the defendant's conduct occurred before March 28, 2007, thirty days after the Attorney General issued the interim rule. Thus, Cain was not subject to SORNA's criminal penalties. The *Cain* Court explicitly took "no position on whether the same would be true for a defendant who failed to register during a period more than thirty days after publication of the regulation." *Id.* at 424 n.7.

Likewise, the Court does not need to determine the earliest date that SORNA went into effect against individuals convicted of sex offenses before the President signed SORNA into law in 2006 because on May 30, 2007, the Attorney General issued another proposed SORNA regulation specifying that comments were due by August 1, 2007. 72 Fed. Reg 30210. Nearly a year later and after the close of the comment period, the Attorney General issued the final guidelines for SORNA on July 2, 2008. 73 Fed. Reg 38030. Coleman does not dispute that SORNA was effective as to him in late 2008 and 2009—a time period included in the indictment.[1]

---

[1] Coleman previously argued that the *Cain* decision required the Court to dismiss the indictment. *See* R. 21. Initially, Coleman claimed that he had not left Kentucky to travel in interstate commerce since 2006 and thus was not required to register under SORNA. *See id.* at 3. However, after the United States informed the Court and Coleman on the November 9, 2009, telephonic conference that the government could produce evidence of Coleman's interstate travel to West Virginia in 2008 and 2009, Coleman abandoned this challenge. R. 27; R. 32.

### III. COLEMAN'S STATUTORY CONSTRUCTION ARGUMENTS

**1. Coleman's Registration Requirement Argument**

Coleman argues in his second supplemental memorandum that he "has never been required to register pursuant to 42 U.S.C. § 16913 and therefore is not in violation of 18 U.S.C. § 2250(a)(1)." R. 30 at 2. He is incorrect.

Coleman argues that he was "not required to register initially pursuant to SORNA under 42 U.S.C. § 16913(b) because the law was not in effect at the time of imprisonment and release." R. 30 at 2. Section (b) provides for initial registration of sex offenders and directs them to register "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or . . . not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." 42 U.S.C. § 16913(b). Coleman is correct that section (b) was not applicable to him at the time of his release since SORNA was not in existence on July 29, 2005, when he was released. That, however, does not save him under SORNA. Indeed, Congress clearly contemplated just this scenario when it passed SORNA, and thus, allowed the Attorney General to devise guidelines for those who could not comply with section (b) because they were convicted and released before SORNA's enactment. Section 16913(d) gives the Attorney General "authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and <u>to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section</u>." 42 U.S.C. § 16913(d) (emphasis added). Thus, Congress authorized the

Attorney General to prescribe the rules for those, like Coleman, who could not comply with section (b). The Attorney General did just that.[2] *See Cain*, 583 F.3d at 417 ("Congress employed language specifying that SORNA could apply to all sex offenders, but that the Attorney General would specify when offenders with past convictions and offenders convicted before the states fully implement SORNA would be required to register."); *see also* 73 Fed. Reg at 38035-36 ("the effects of SORNA's registration and notification requirements on sex offenders are much the same regardless of whether their sex offense convictions occurred before or after SORNA's enactment or its implementation in a particular jurisdiction").

In this regard, section 16913(a) of Title 42 of the United States Code defines who is required to register and states that a "sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). By its terms § 16913(a) applies to all sex offenders. And since as discussed above the Attorney General has made this provision retroactive to include Coleman, he must register under SORNA.

Coleman also argues that even though he "may have participated in interstate travel to West Virginia after SORNA became applicable to him, he did not <u>change</u> his place of residence or place of employment and he did not attend school—thus not triggering 42 U.S.C. § 16913(c)." R. 30 at 2. 42 U.S.C. § 16913(c) explains the requirement to keep a previous registration current

---

[2]Coleman has not challenged the statute as being an impermissible delegation of legislative authority to the executive branch. In *United States v. Whaley*, the Fifth Circuit discussed why this was not an impermissible delegation. 577 F.3d 254, 263-264 (5th Cir. 2009).

by giving the offender three days after a change of name, residence, employment, or attending a new school to update his registration.

While Coleman is correct that like § 16913(b), section (c) does not apply to him, these arguments are inapposite because the registration requirement of § 16913(a) and the final guidelines promulgated pursuant to § 16913(d) clearly apply to Coleman. Indeed, Coleman never argues that § 16913(a) does not apply to him. Further, Coleman does not challenge any provision of the July 2, 2008, final guidelines promulgated by the Attorney General pursuant to § 16913(d).

**2. Coleman's Congressional Intent Argument**

Coleman also argues that the "practical purpose of SORNA is to require sex offenders to register when they travel between states to live, work, or enroll in school." R. 30 at 3. Coleman may be correct as to the Congressional intent behind the statute. However, the plain language of SORNA does not limit SORNA's registration requirements to a situation where the sex offender travels interstate to live, work, or go to school. 18 U.S.C. § 2250(a)(2)(B) states that SORNA's registration requirement is triggered if the sex offender "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country." *Id*. The United States notes that Coleman's interstate travel from Kentucky to West Virginia—even though not related to a change of residence, work, or school—required Coleman to register under SORNA. R. 31 at 3. The government is correct. The plain language of SORNA does not require interstate travel to be related to the sex offender's change of residence, work, or enrollment in school. The Sixth Circuit recently re-affirmed this approach to statutory interpretation. *See Thompson v.*

*North Am. Stainless, LP*, 567 F.3d 804, 807 (6th Cir 2009) (en banc) ("'If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 490 (1917))). Thus, the plain meaning of SORNA dictates that Coleman's interpretation of the interstate travel element of SORNA is incorrect.

Coleman notes that under a plain language interpretation of SORNA, there are circumstances when "SORNA would merely duplicate existing state registration requirements and do nothing to actually monitor the interstate movement of convicted sex offenders." R. 30 at 3. While this argument is correct, it is not dispositive with respect to Coleman's motion to dismiss. There are many federal criminal statutes—for example, many firearm and drug laws—that duplicate existing state laws. The Court cannot dismiss Coleman's indictment on the grounds that the plain language of SORNA may encompass more conduct than Congress may have intended. For these reasons, Coleman's statutory construction arguments fail.

### IV. COLEMAN'S CONSTITUTIONAL CHALLENGES

Coleman also alleges that SORNA violates the following provisions of the United States Constitution: (1) the Ex Post Facto Clause, (2) the Commerce Clause, (3) the Due Process Clause, (4) the Equal Protection Clause, and (5) the Necessary and Proper Clause. R. 13. These arguments, however, have been previously raised and rejected by a vast majority of the courts that have faced them.

Many individuals indicted under SORNA have challenged the constitutionality of the statute. Since SORNA's enactment in 2006, eight different defendants have brought

constitutional challenges to SORNA in the district courts of the Sixth Circuit.[3] The United States Court of Appeals for the Sixth Circuit has only heard one of these constitutional challenges and upheld the statute in an unpublished opinion, *United States v. Samuels*, 319 F. App'x 389 (6th Cir. 2009), *aff'g* 543 F. Supp. 2d 669 (E.D. Ky. 2008).

There have been hundreds of similar challenges across the country.[4] As of the date of this Memorandum Opinion and Order, the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have all rejected various constitutional challenges to SORNA.[5] To date, no appellate court has held otherwise. While the United States Supreme Court has yet to rule on the constitutionality of SORNA, the sea of SORNA case law for the Court to navigate is wide and deep.

---

[3] Seven district courts in the Sixth Circuit have upheld SORNA. *See United States v. Stock*, No. 2:09-CR-46, 2009 WL 2905929 (E.D. Tenn. Sept. 2, 2009); *United States v. Hernandez*, 615 F. Supp. 2d 601 (E.D. Mich. 2009); *United States v. Benton*, No. 2:08-CR-156, 2008 WL 5273971 (S.D. Ohio Dec. 16, 2008); *United States v. Hann*, 574 F. Supp. 2d 827 (M.D. Tenn. 2008); *United States v. Trent*, 568 F. Supp. 2d 857 (S.D. Ohio 2008); *United States v. Utesch*, No. 2:07-CR-105, 2008 WL 656066 (E.D. Tenn. Mar. 6, 2008). One district court held that SORNA violates the Ex Post Facto Clause as to a defendant that did not travel interstate after the effective date of SORNA. *See United States v. Smith*, 481 F. Supp. 2d 846 (E.D. Mich. 2007).

[4] As of January 20, 2009, over 114 district court opinions addressed the constitutionality of SORNA—with 88 of them rejecting all constitutional challenges. *See* Corey Rayburn Young, *One of These Laws is Not Like the Others: Why the Federal Sex Offender Registration and Notification Act Raises New Constitutional Questions*, 46 Harv. J. on Legis. 369, 383 (2009).

[5] *See United States v. George*, 579 F.3d 962 (9th Cir. 2009); *United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009); *United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008); *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008); *United States v. May*, 535 F.3d 912 (8th Cir. 2008).

### 1. The Ex Post Facto Clause

Coleman argues that the imposition of a sentence of up to ten years for failure to register as a sex offender relates more to a defendant's previous sex offense than to the subsequent failure to register as a sex offender. R. 13 at 2-4. The Constitution prohibits Congress from passing an ex post facto law. U.S. Const. art. I, § 9. SORNA is not an ex post facto one with respect to Coleman. The indictment charges Coleman with traveling interstate and failing to register as a sex offender after SORNA became effective against him.

Ex post facto laws are those that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). The Sixth Circuit has held—albeit in an unpublished opinion—that SORNA is not retroactive because it is not punishing the sex offender's previous behavior, but his failure to register (new behavior). *See Samuels*, 319 F. App'x at 394-395. Other circuits have held the same when faced with ex post facto challenges. *Cf. May*, 535 F.3d at 919 ("Section 2250 punishes an individual for traveling in interstate commerce and failing to register. The statute does not punish an individual for previously being convicted of a sex crime."). Coleman concedes that "[n]umerous courts have held that SORNA . . . does not impose punishment for preexisting crimes." R. 13 at 2. It is not worth reinventing the wheel here, and thus, the Court simply relies upon the reasoning in *Samuels* and *May* in rejecting Coleman's ex post facto challenge.

### 2. The Commerce Clause

The Commerce Clause gives Congress the power to "regulate commerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3. Under the power to regulate interstate commerce,

10

there are three broad areas that Congress may regulate: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (citations omitted).

Coleman argues that his failure to register as a sex offender was a "purely intrastate activity," and thus beyond the scope of the Commerce Clause. R. 13 at 4-6. The Sixth Circuit has not addressed this argument, but other circuits have rejected it. *See Whaley,* 577 F.3d at 258 ("Through § 2250, Congress has forbidden sex offenders from using the channels of interstate commerce to evade their registration requirements, and we have no doubt that it as within its power under the Commerce Clause to do so."); *id.* at 258 n.1 (collecting cases noting other circuits have so held); *see also Ambert*, 561 F.3d at 1210 ("Section 2250 is a proper regulation falling under either of the first two *Lopez* categories because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce."). Moreover, it is clear that the statute does not apply to those who do not travel interstate: "a sex offender who does not travel in interstate commerce may ignore SORNA's registration requirements without fear of federal criminal consequences." *Whaley*, 577 F.3d at 260. Thus, for the reasons provided in *Whaley* and the cases cited therein, Coleman's argument under the Commerce Clause fails.

**3. The Due Process Clause**

The Due Process Clause states that no person may be deprived of "life, liberty or property without due process of law." U.S. Const. amend. V. Coleman argues that it was "impossible to

11

comply with SORNA" since there was "no system for federal registration in place at the state or federal level" when he moved to Kentucky in 2006. R. 13 at 7. Thus, he argues it would be an "arbitrary and capricious violation of defendant's due process rights to prosecute him under SORNA." *Id.*

The Sixth Circuit rejected a similar argument in *Samuels* and held that "Samuels's prior knowledge of his duty to register under state law qualified as effective notice under SORNA." 319 F. App'x at 393. Here, authorities notified Coleman of his duty to register as a sex offender on August 9, 2006. R. 16 at 2. Ohio authorities also gave Coleman notice of his requirement to register in 2002. *Id*. Further, both Kentucky and Ohio had operational sex offender registries in 2006. *Id.* at 8; *see also Gould*, 568 F.3d at 467 ("[A] sex offender is able to register under SORNA if he is able to register by means of an existing state registration facility"). Considering these factors, Coleman's Due Process challenge is without merit. *See Whaley*, 577 F.3d at 262 ("We agree with the other circuits to have addressed this issue that notice of a duty to register under state law is sufficient to satisfy the Due Process Clause.") (collecting cases).

**4. The Equal Protection Clause**

Next, Coleman contends that SORNA violates the Equal Protection Clause because it only applies to some sex offenders—those that travel in interstate commerce. R. 13 at 7-8. Coleman is correct that SORNA does not apply to individuals that do not travel interstate. *See supra*. However, he is incorrect that this discrepancy is a violation of the Equal Protection Clause because sex offenders are not members of a suspect class under equal protection jurisprudence. *See Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007). Thus, the Court reviews

Coleman's Equal Protection challenge under a rational basis inquiry as opposed to strict scrutiny. *Id.*; *see also United States v. Lafferty*, 608 F. Supp. 2d 1131, 1143-45 (D. S.D. 2009). As the government correctly notes in its response, SORNA is rationally related to the legitimate government interest of protecting the public from sex offenders by creating a national registry of sex offenders. R. 16 at 9-10. SORNA also aims to prevent "sex offenders from circumventing the registration requirements by moving from state to state." *Id.* (quoting *United States v. Benevento*, 633 F. Supp. 2d 1170, 1211 (D. Nev. 2009)). Considering these arguments, the government has shown a rational basis for SORNA. Thus, Coleman's Equal Protection argument fails.

### 5. The Necessary and Proper Clause

Coleman also claims that SORNA's registration requirement under 42 U.S.C. § 16913(a) goes beyond Congress's power to "make all laws which shall be necessary and proper" for carrying out its enumerated powers—here, its power under the Commerce Clause. U.S. Const. art I, § 8; R. 13 at 8-10. "[T]he authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws governing intrastate activities that substantially affect interstate commerce. . . . Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce." *Gonzales v. Raich,* 545 U.S. 1, 34-35 (2005).

Coleman argues that monitoring the whereabouts of convicted sex offenders is not necessary and proper for carrying out the objectives of the Commerce Clause. R. 13 at 10. Coleman also makes many of the same arguments he previously made with respect to the

13

Commerce Clause—mainly that SORNA regulates purely intrastate activity. Other circuits have rejected similar arguments. *See Whaley*, 577 F.3d at 260 ("[T]o the extent that § 16913 applies to sex offenders remaining intrastate, the Necessary and Proper Clause provides Congress with the necessary authority." (citing *Raich*, 545 U.S. at 35-37 (Scalia, J., concurring))); *see also United States v. Howell*, 552 F.3d 709, 715 (8th Cir. 2009) ("[A]n analysis of § 16913 under the broad authority granted to Congress through both the commerce clause and the enabling necessary and proper clause reveals the statute is constitutionally authorized."). For the reasons provided in those cases, Coleman's argument under the Necessary and Proper Clause fails.

### V. CONCLUSION

In conclusion, Coleman's statutory construction arguments and Coleman's constitutional challenges to SORNA fail to justify striking down the statute or finding it is inapplicable to him. Accordingly, it is **ORDERED**:

(1) Coleman's motion to dismiss the indictment, R. 13, is **DENIED**.

(2) Coleman **SHALL NOTIFY** the Court no later than **Monday, November 30, 2009**, if the Court did not address all of his remaining challenges to the indictment in this Memorandum Opinion and Order.

This the 24th day of November, 2009.



Signed By:
*Amul R. Thapar* AT
United States District Judge